**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

SPENCER ROBERTS,

Plaintiff,

v.

BARTOLO RAMOS,

Defendant.

Case No. 3:26-cv-00222-ART-CLB

**ORDER**

[ECF Nos. 6, 13, 14]

Currently pending before the Court is Defendant Bartolo Ramos's ("Ramos") motion to stay discovery. (ECF No. 13.)[1] Also, pending before the Court is Ramos's motion for a protective order, (ECF No. 14)[2], and Plaintiff Spencer Roberts's ("Roberts") proposed discovery plan and scheduling order. (ECF No. 6.) For the reasons set forth below, the Court grants Ramos's motion to stay discovery, (ECF No. 13), and denies both Ramos's motion for a protective order, (ECF No. 14), and Roberts's proposed discovery plan and scheduling order as moot. (ECF No. 6.)

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 27, 2026, Roberts initiated this lawsuit by filing his complaint. The complaint alleges the following: On July 8, 2025, Roberts, the Justice of the Peace for Lander County, met with Ramos, the County Manager for Lander County, in "the Lander County Courthouse to discuss the proposed revisions to the courthouse bailiff job description." (ECF No. 1 at 3.) Toward the end of the meeting, Roberts attempted to leave the room but was met by Ramos who "approached him aggressively, moved into his path, and blocked him." (*Id.*) At this time, Ramos "struck Roberts in the shoulder" and then "proceeded to strike Roberts's shoulder a second time, tightly gripping it, pushing him,

[1] Roberts responded to the motion to stay discovery, (ECF No. 16), and Ramos replied. (ECF No. 17.)

[2] Roberts responded to the motion for protective order, (ECF No. 15), and Ramos replied. (ECF No. 17.)

and preventing him from leaving the room." (*Id.*) "[I]t was not until after Ramos used force against Roberts that he was able to exit the room." (*Id.*) Roberts further alleges the strikes thrown by Ramos resulted in injuries to his recently repaired shoulder. (*See id.* at 3-4.) "Roberts [then] reported the incident to the Lander County worker's compensation insurance," (*Id.* at 4), but does not explicitly state if he received any recovery or compensation from the worker's compensation claim. (*Compare id.* (stating that Roberts filed the workers' compensation insurance claim but nothing more); *with* ECF No. 10 at 16 (stating that Roberts does not allege receiving any benefits from workers' compensation but not outright denying it).) Based on these allegations, Roberts asserts two causes of action: (1) excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983; and (2) excessive force in violation of Article I, Section 18 under the Nevada Constitution. (ECF No. 1.)

In response to the complaint, Ramos filed a motion to dismiss arguing the complaint fails to state a claim upon which relief may be granted. (ECF No. 5.) Specifically, Ramos argues this case should be dismissed because: (1) Roberts fails to state a claim of excessive force under § 1983; (2) qualified immunity bars Roberts's § 1983 claim as a matter of law; and (3) Roberts's state law excessive force claim fails for the same reasons as the § 1983 claim as a matter of law. (ECF No. 5.)

Several days after Ramos filed the motion to dismiss, Roberts filed a proposed discovery plan and scheduling order after Ramos declined to attend a Rule 26(f) conference claiming he planned to file a motion to stay discovery. (ECF No. 6.) Several weeks later, Ramos filed the instant motion to stay discovery arguing discovery should be stayed because: (1) the pending motion to dismiss is potentially dispositive; (2) the motion can be decided without additional discovery; and (3) upon conducting a 'preliminary peek' of the motion to dismiss, the Court would be convinced the plaintiff cannot state a claim for relief. (ECF No. 13 at 4 (citing *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013).)

In conjunction with the motion to stay discovery, Ramos also filed a motion for

protective order. (ECF No. 14.) In this motion, Ramos asserts that good cause exists to provide protection from discovery because: (1) the harm of the discovery is concrete and immediate as the discovery responses are due immediately; and (2) no discovery is needed to resolve the pending motions. (ECF No. 14.)

Roberts opposed the motion to stay and requests that discovery proceed. (ECF No. 16.) Roberts argues Ramos's motion to dismiss does not threaten to dispose of the entire case. (*Id.* at 4-5.) Additionally, Roberts argues Ramos's motion to dismiss cannot be decided without additional discovery. (*Id.* at 5-8.) Finally, Roberts argues his complaint does state a claim upon which relief can be granted, and Federal Rule of Civil Procedure 1 encourages denying a stay of discovery. (*Id.* at 8-11.)[3]

## II. LEGAL STANDARD

To determine if a stay is appropriate pending the ruling on a motion to dismiss, the Court must consider the following factors: (1) whether the pending motion is potentially dispositive of the case; (2) whether the motion can be decided without additional discovery; and (3) whether the court is convinced that the plaintiff cannot state a claim for relief. *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013). The Court must take a "preliminary peek" at the merits of the underlying dispositive motion in order to find whether the plaintiff can state a claim. *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 603 (D. Nev. 2011). The "preliminary peek" does not prejudge the outcome of the motion; it merely evaluates whether an order staying discovery is warranted. *See id.*

In conducting its review, the Court also considers the goal of Federal Rule of Civil Procedure 1, which provides that the Rules should "be construed, administered, and

---

[3] To the extent Roberts alleges Ramos failed to comply with the Court's standing order by failing to file a "Motion Regarding Discovery Dispute" prior to Ramos filing his motion to stay discovery, (ECF No. 16 at 11), the Court disagrees with this interpretation of the Court's Standing Order. The Standing Order intentionally separates "Motions to Dismiss and Discovery" from "Informal Discovery Dispute Procedure" to indicate the difference in procedure between the two. (*See* ECF No. 7.) Although the Court recognizes that it is good practice to meet and confer prior to filing a motion to stay discovery, it is not the Court's intention that a motion for discovery dispute be filed in this situation. (*Id.*)

employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action." With Rule 1 as its prime directive, the Court must decide whether it is more just to speed the parties along in discovery while a dispositive motion is pending or to delay discovery to accomplish the inexpensive determination of the case. See *Big City Dynasty v. FP Holdings*, L.P., 336 F.R.D. 507, 512 (D. Nev. 2020). For those reasons a stay of discovery should only be granted when the Court is "convinced" the plaintiff cannot state a claim. *Tradebay,* 278 F.R.D. at 603 (D. Nev. 2011).

## III. DISCUSSION

### A. Ramos's Motion to Dismiss is Dispositive

First, the Court must determine whether Ramos's motion to dismiss is potentially dispositive of the case. *Kor Media Group, LLC.*, 294 F.R.D. at 581. Here, Ramos's motion to dismiss argues Roberts has failed to state a claim upon which relief can be granted. (ECF No. 5.) Specifically, Ramos argues his alleged conduct does not fall under the purposes of excessive force under § 1983. (*Id.* at 5.) Additionally, Ramos argues that qualified immunity bars Robert's from raising the § 1983 claim, as no clearly established right exists in this instance. (*Id.* at 16-19.) Ramos further argues Roberts's state law claim fails for the same reasons as his § 1983 claim, and that Nevada's workers' compensation scheme independently bars Roberts's state law claim. (*Id.* at 19-21.) Finally, Ramos argues the Court should decline supplemental jurisdiction over the state law claim once the § 1983 claim has been dismissed. (*Id.* at 21-22.)

Roberts responded to the motion to dismiss arguing the motion to dismiss was not dispositive. (ECF No. 10.) Specifically, Roberts argues Ramos's motion to dismiss is defective as it recasts Roberts's claims by using facts and materials outside of the complaint. (*Id.* at 4-5.) Additionally, Roberts's argues his right to be protected from unreasonable seizures was clearly established at the time of the altercation, and thus Ramos cannot establish qualified immunity. (*Id.* at 6-9, 14-15.) Roberts further argues Ramos seized Roberts and used excessive force preventing Roberts from leaving the meeting while acting under the color of state law. (*Id.* at 9-14.) Also, Roberts argues

Ramos violated his state rights which supersedes any conflict with Roberts's workers' compensation claim. (*Id.* at 15-17.) Finally, Roberts argues the Court should retain supplemental jurisdiction over the state law claim because the federal claim will survive the motion to dismiss and the state law claim arises out of the same operative facts. (*Id.* at 17-18.)

Upon review of the motion and the parties' arguments, the Court agrees with Ramos. If the motion to dismiss is granted, it is potentially dispositive of all the claims asserted in the complaint and the case would be dismissed in its entirety. Therefore, the Court finds Ramos's motion to dismiss is potentially dispositive of the case.

**B. No Discovery is Needed to Decide the Motion to Dismiss**

Next, the Court must determine whether additional discovery is necessary for a ruling on the motion to dismiss. *Kor Media Group, LLC.*, 294 F.R.D. at 581. Ramos argues that no additional discovery is necessary to assess the ability for Ramos, as the County Manager for Lander County, to conduct a Fourth Amendment seizure, or whether qualified immunity applies. (ECF No. 13 at 6-7.) Roberts disagrees, claiming that because there is a dispute between the parties over the facts of the confrontation additional discovery is needed. (*See* ECF No. 16 at 5 (arguing that the difference between Ramos describing the contact as a "touch" versus Roberts describing it as a "strike" warrants additional discovery).) However, at the motion to dismiss phase the Court accepts all well-pleaded factual allegations as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "view[ed] . . . in the light most favorable to the" nonmoving party. *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1087 (9th Cir. 2021). Thus, any difference between whether the contact to Roberts's shoulder was a "touch" or a "strike" is moot as the district court is required to accept the facts and claims in the light most favorable to Roberts, in this case being that it was a "strike".

Additionally, Roberts filed his response to the motion to dismiss prior to the stay of discovery and did not indicate any additional discovery was needed to address dismissal of the § 1983 claim. (*See* ECF No. 10.) In fact, Roberts even recognized the Court would

accept all his "well-pleaded allegations as true and draw all reasonable inferences in his favor." (*Id.* at 4.) Thus, the Court finds additional discovery is not needed to decide the motion to dismiss.

**C. The Court is Convinced the Motion to Dismiss is Likely to be Granted**

Finally, the Court must conduct a "preliminary peek" of the motion to dismiss to determine whether a stay is warranted. *Tradebay*, 278 F.R.D. at 603. In conducting this preliminary peek, it is the Court's duty to ensure an inexpensive determination of this action, and delaying discovery would prevent economic waste, since conducting discovery before the ruling on the motions to dismiss would be futile. Fed. R. Civ. P. 1; see *Big City Dynasty*, 336 F.R.D. at 512. Having conducted this preliminary peek, the Court finds a stay is warranted.

**1. Qualified Immunity**

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988-89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the Court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639-40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The Court may analyze the elements of the test in whatever order is appropriate under the circumstances

of the case. *Pearson*, 555 U.S. at 240-42.

"[J]udges of the district courts… should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "[W]hether a constitutional right was violated. . . is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).

Although it is disputed whether Ramos violated Roberts's constitutional rights, after reviewing the motion to dismiss, the Court finds that it is likely he did not violate a "clearly established" right. In Roberts's opposition to the motion to dismiss, he provides no authority supporting his claim that Ramos, as the County Manager, violated a "clearly established right" of Roberts. (*Cf.* ECF No. 10.) To the extent that Roberts points to any authority indicating that the Fourth Amendment protection against excessive use of force applies to the conduct of non-law enforcement government officials, he merely cites to authorities where the official had either a custodial or supervisory authority over the person allegedly seized. *See Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003) (explaining a "school administrator performing an administrative function by discipling Doe" constituted a clearly established right); *see also Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175 (9th Cir. 2003) (finding a teacher's beating and slamming of a student was a violation of a clearly established right). Additionally, Roberts provides no authority that as the Justice of the Peace of Lander County he was under a supervisorial or custodial relationship with Ramos. (*Cf.* ECF No. 10.) To the contrary, Ramos cites to the Lander County Code which indicates as the County Manager he is not authorized "to manage or control performance of the duties of elected or appointed county officials." Lander County, Nev., Code § 2.06.050(C) (2009).

Thus, having reviewed the motion to dismiss, the Court is fairly convinced that Roberts is not likely able to establish that Ramos violated a "clearly established" right of Roberts's, and Roberts's claim for a violation of his Fourth Amendment right against excessive force is likely to be dismissed.

### 2. State Law Claim

Considering the likely dismissal of Roberts's federal civil rights claim, the Court finds that it is unlikely that the District Court will choose to exercise supplemental jurisdiction over the additional state law claim. The Supreme Court has instructed that if all the federal claims have been dropped, the district courts should decline supplemental jurisdiction over the remaining state law claims. *Royal Canin U.S.A., INC. v. Wullschleger*, 604 U.S. 22 (2025). Given Roberts's federal claim will likely be dismissed, the Court finds that that it is also likely the district court will refuse supplemental jurisdiction over the remaining state law claim.

To the extent the state law claim will continue in state court if supplemental jurisdiction is not granted, it is unclear how much, if any, discovery will be allowed. Here, there is dispute over whether Roberts's state law claim is barred by Nevada's workers compensation scheme. (*Compare* ECF No. 10 at 15-17 (arguing that the workers' compensation scheme does not bar the state law claim as Roberts does not claim having received any benefits from the scheme); *with* ECF No. 12 at 10 (arguing the workers' compensation scheme does bar the state law claim).) In light of this issue, the Court finds that permitting any discovery on this claim may undermine the state court discovery process over that claim if the District Court declines supplemental jurisdiction. Thus, for all the above reasons, the Court finds a stay of discovery is appropriate pending the resolution of the motion to dismiss.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Ramos's motion to stay discovery, (ECF No. 13), is **GRANTED** and discovery is stayed in this case pending resolution of the motion to dismiss.

**IT IS FURTHER ORDERED** that Ramos's motion for protective order, (ECF No. 14), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Roberts's proposed discovery plan and scheduling order, (ECF No. 6), is **DENIED** as moot.

**IT IS FUTHER ORDERED** that if the motion to dismiss is denied, the parties shall file a Proposed Discovery Plan and Scheduling Order within 30 days of the entry of the order denying the motion to dismiss.

**DATED**: July 30, 2026 .

**UNITED STATES MAGISTRATE JUDGE**